15-3336-pr
*Riles v. Buchanan*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1ˢᵗ day of September, two thousand sixteen.

PRESENT:   JOHN M. WALKER, JR.,
           DENNY CHIN,
           RAYMOND J. LOHIER, JR.,
                 *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DANIEL A. RILES, JR.,

                 *Plaintiff-Appellant*,

                 v.                                                    15-3336-pr

MARK BUCHANAN, Dir of Medical Svc, CARSON
WRIGHT, Dr, MICHAEL BLUE, CO,
                 *Defendants-Appellees*.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

\*       The Clerk of Court is respectfully instructed to amend the caption as set forth above.

FOR PLAINTIFF-APPELLANT:      BENJAMIN C. JENSEN (James A. Wade, Kelly Frye Barnett, *on the brief*), Robinson & Cole LLP, Hartford, Connecticut.

FOR DEFENDANTS-APPELLEES:      MICHAEL K. SKOLD, Assistant Attorney General, *for* George Jepsen, Attorney General of Connecticut, Hartford, Connecticut.

Appeal from the United States District Court for the District of Connecticut (Chatigny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Daniel A. Riles, Jr. appeals the judgment of the district court entered September 30, 2015, dismissing his claims brought under 42 U.S.C. § 1983 against various doctors, administrators, and corrections officers at Northern Correctional Institution ("Northern"). By its Ruling and Order entered the same day, the district court granted summary judgment in favor of defendants. This case arises from a March 17, 2008 incident at Northern, during which a corrections officer, Michael Blue, used physical force against Riles, an inmate. Riles contends that the force was excessive, and that, in the ensuing months, Drs. Carson Wright and Mark Buchanan refused, with deliberate indifference, to provide him with basic medical care. We assume the parties' familiarity with the underlying facts and procedural history of the case.

2

On appeal, Riles challenges three of the district court's rulings: (1) Riles failed to exhaust his administrative remedies with respect to his excessive force claim against Blue, (2) Riles's failure to exhaust his administrative remedies was not excused, and (3) Riles's deliberate indifference claims against Drs. Wright and Buchanan raised no issues of material fact and were properly disposed of through summary judgment. We consider each challenge in turn.

We review a district court's grant of summary judgment *de novo*, and "will affirm only if, construing the evidence in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *State Emp. Bargaining Agent Coalition v. Rowland*, 718 F.3d 126, 131-32 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

1. **Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act of 1995 (the "PLRA") requires an inmate to exhaust "such administrative remedies as are available" before bringing suit to complain of prison conditions or actions taken by prison officials, such as the use of excessive force. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016). The PLRA requires "proper exhaustion," which means "using all steps that the [prison grievance system] holds out, and doing so *properly* (so that the [prison grievance system] addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)

(citation omitted). "Untimely or otherwise procedurally defective administrative grievance[s] or appeal[]s" fail to satisfy PLRA's exhaustion requirements. *Id.* at 83-84.

The Connecticut Department of Correction ("DOC") requires inmates to submit grievances in accordance with Administrative Directive 9.6 ("AD 9.6"). According to that directive, the aggrieved inmate must first seek informal resolution prior to filing a grievance. AD 9.6 § 6.A. If attempts to resolve the issue verbally fail, then the inmate must submit an Inmate Request Form clearly stating the problem and requesting a remedy. *Id.* If no response from DOC is received within fifteen business days of receipt of the Inmate Request Form or if the remedy offered through informal resolution is unsatisfactory, the inmate may file a Level 1 grievance within thirty days of the incident giving rise to the grievance. *Id.* § 6.C.

When submitting a Level 1 grievance, the inmate must attach the previously-filed Inmate Request Form or explain why it is not attached. *Id.* When an inmate files a grievance that fails to comply with these procedural requirements, DOC may either 1) return the grievance without disposition, at which point inmates are permitted to correct the error and refile the grievance, *id.* § 6.E, or 2) reject the grievance outright without giving the inmate an opportunity to refile, *id.* § 6.F. An inmate may appeal a Level 1 disposition to Level 2 within five days of receipt of the decision. Northern is to provide a written response to the Level 1 grievance within 30 business days of receipt of the grievance.

4

As the district court concluded, the record shows that Riles failed to "properly exhaust" the administrative remedies available to him before filing suit in the district court. First, while he purportedly made a verbal complaint about the incident, it is undisputed that when that complaint failed to result in any relief, Riles did not submit the requisite Inmate Request Form. Second, while Riles purportedly filed a Level 1 grievance, he did not provide an explanation for not including an Inmate Request Form. Finally, Riles's attempt to restart the grievance process some weeks later was itself improper because it was filed months after the thirty-day period set forth in Administrative Directive 9.6 § 6.C.

We acknowledge that Riles apparently made several submissions in his attempt to exhaust his administrative remedies.[1] Nevertheless, because he did not "properly" "us[e] all steps that the [prison grievance system] h[eld] out," the district court did not err in concluding that Riles failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with [the prison grievance system's] deadlines and other critical procedural rules . . . ."). As the Supreme Court recently made clear in holding that courts may not excuse a prisoner's failure to exhaust because of "special circumstances," "mandatory exhaustion statutes like the

---

[1] Defendants deny that Riles submitted Level 1 and 2 grievances, representing that they denied Riles's Level 3 grievance because he had not submitted, as far as they could tell, the Level 1 and 2 grievances.

PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross*, 136 S. Ct. at 1857.

> ### 2. Administrative Remedies Were Available

The PLRA contains a "textual exception to mandatory exhaustion" -- the administrative remedies must be "available." *Ross*, 136 S. Ct. at 1858. An administrative procedure is unavailable when: (1) "it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that is becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

First, Riles argues that he was assured by DOC staff that the assault would be investigated, leading him to reasonably believe that his verbal complaint resolved the issue such that no written request was required. Administrative remedies are not "available" if prison officials "interfere[] with an inmate's pursuit of relief" by misleading him to think that he has done everything necessary to initiate the grievance process or threatening him with retaliation. *Id.* at 1860 & n.3. Even assuming Riles was initially misled, he learned shortly after such assurances that his verbal complaint was not being resolved, and, on March 23, purportedly filed the Level 1 grievance. Thus, to the extent he was misled, Riles learned that the requested remedy was not being offered by March 23, affording him nine days to timely file an Inmate Request Form pursuant

6

to Administrative Directive 9.6. Administrative procedures were, therefore, still available to him.

Nor did DOC officials' alleged threats of retaliation interfere with his exhaustion efforts. In Riles's complaint, he claimed that Corrections Officer Bissaillon threatened to punish him if he "pushed the issue." App. 14-15. But because Riles claims that he thereafter submitted his March 23 Level 1 grievance in spite of this alleged threat, it cannot be said that the threat interfered with his exhaustion. He was not deterred from exhausting; he simply did not exhaust in accordance with the procedures.

Second, Riles argues that Administrative Directive 9.6 is composed of confusing and inconsistent provisions, rendering them effectively unavailable. Where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it," the procedure is incapable of use and, therefore, unavailable. *Williams v. Priatno*, --- F.3d ---, 2016 WL 3729383, at *5 (2d Cir. July 12, 2016) (excusing prisoner's non-exhaustion where the grievance process did "not contemplate the situation in which [the prisoner] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance"). Though certainly rigorous in some respects, Administrative Directive 9.6 addresses Riles's situation and is not so opaque as to be unavailable, plainly stating that "[i]f the verbal option does not resolve the issue,

7

the inmate shall submit a written request via CN 9601, Inmate Request Form."  AD 9.6 §

6.A.

Finally, to the extent Riles relies on our decision in *Hemphill v. New York*,

380 F.3d 680 (2d Cir. 2004), to argue that special circumstances excuse his failure to

exhaust available remedies, that avenue has been foreclosed.  *See Williams*, 2016 WL

3729383, at *4 (explaining that *Ross* abrogated the special-circumstances exception and

"supplant[ed] our *Hemphill* inquiry by framing the exception issue entirely within the

context of whether administrative remedies were actually available").

**3.** **Riles's Deliberate Indifference Claim is Insufficient as a Matter of Law**

To prevail on an Eighth Amendment claim arising from medical care, a

prisoner must establish two elements: 1) a "sufficiently serious" deprivation of medical

care measured from an objective perspective; and 2) an official's act or omission

accomplished with "deliberate indifference," *i.e.*, "while actually aware of a substantial

risk that serious inmate harm will result."  *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d

Cir. 2006).

First, Riles's claim that Dr. Wright acted with deliberate indifference in

failing to provide pain medication is belied by the medical records, which show that Dr.

Wright saw him on a number of occasions, as discussed below, and had even prescribed

Riles a thirty-day regimen of Motrin that was available to him at the time of his March

24, 2008 visit.

Second, the allegation that Dr. Wright and Dr. Buchanan acted with deliberate indifference with respect to their treatment of Riles's broken nose, loss of taste and smell, and nosebleeds is unsupported by the evidence in light of the record as a whole. Shortly after the initial medical visit, on April 9, 2008, an x-ray was taken which revealed "multiple nose fractures of the right and left nasal bone, mildly displaced." App. 492. The evidence demonstrates that such injuries ordinarily heal without medical intervention, and Riles has not submitted evidence suggesting otherwise. And though there may have been significant delays in responding to Riles's complaints of his decreasing ability to taste and smell, the record shows that it was not unreasonable for the doctors to believe that the anosmatic condition was untreatable and caused by the initial injury rather than lack of treatment. Therefore, failure to treat it did not cause a substantial risk of serious harm, and neither Dr. Wright in his treatment nor Dr. Buchanan in his denial of Dr. Wright's request to enlist a specialist was acting with deliberate indifference. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

With respect to the recurring nosebleeds, the undisputed evidence demonstrates that Riles received continuous treatment from the time he began

9

complaining of the nosebleeds until they were successfully treated with allergy medication. At worst, Dr. Wright was negligent in failing to resolve Riles's nosebleeds sooner. Even assuming Riles's recurring nosebleeds were a "serious medical condition," there is no evidence that Dr. Wright acted with deliberate indifference in his course of treatment. *Salahuddin*, 467 F.3d at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.").

We have considered all of Riles's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10